# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **In re Application of** § § | |
| **Oasis Focus Fund LP, Quadre Investments, L.P., and 507 Summit LLC,** § § § § § | **No. 1:23-CV-00239-DII** *consolidated with* |
| **Petitioners, for an Order pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding.** § § § § § | **No. 1:23-MC-00473-RP** |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

"To promote international dispute resolution and comity, [28 U.S.C.] § 1782 authorizes federal district courts to issue discovery orders ancillary to proceedings in 'foreign or international tribunals.'" *Republic of Ecuador v. Connor*, 708 F.3d 651, 654 (5th Cir. 2013). Invoking this statute, Petitioners Oasis Focus Fund LP, Quadre Investments, L.P., and 507 Summit LLC seek authorization from the Court to serve discovery on Hisayuki Idekoba—CEO of the Japanese company Recruit Holdings and a resident of the Austin Division—in connection with an appraisal proceeding currently underway in the Cayman Islands. Dkt. 1.[1] For the reasons stated below, the undersigned recommends that the District Court permit Petitioners to go forward

---

[1] The District Court granted the parties' joint motion to consolidate Petitioners' applications, which had been filed separately, into this cause. *See* Dkt. 27 (consolidating Case No. 1:23-MC-00473-RP in this case). Unless stated otherwise, docket citations refer to this -239 cause number.

1

with their proposed document requests, but decline to authorize the requested deposition.

## I.   BACKGROUND

Petitioners are members of a group of dissenting shareholders of 51job, Inc., a human resources company incorporated in the Cayman Islands and headquartered in China. Japan-based Recruit Holdings Co. is the majority shareholder in 51job. Dkt. 1-4, at 3-4. Idekoba, the target of Petitioners' discovery, is Recruit's President, CEO, and Representative Director of Recruit's board. *Id.*, at 5. Petitioners brought an appraisal proceeding in the Grand Court of the Cayman Islands to determine the fair value of their former shares following a merger transaction involving 51job. *Id.*, at 2, 12. Idekoba is not a party to that proceeding, and because he resides here in Austin, Texas, he is beyond the jurisdictional reach of that court. *Id.*, at 13.

Accordingly, Petitioners Oasis and Quadre filed an *ex parte* application in this Court to obtain discovery from Idekoba pursuant to 28 U.S.C. § 1782, which authorizes U.S. district courts to order residents of the district to respond to discovery for use in foreign proceedings. Dkt. 1. In addition to a deposition, Petitioners seek the following categories of documents from Idekoba:

- "1. [a]ll non-privileged Documents and Communications Concerning the Merger";
- "2. [a]ll Documents and Communications Concerning the valuation of [51job]";
- "3. [a]ll Documents and Communications Concerning regulatory developments in the People[']s Republic of China … and their purported or potential impact on the Merger";

- "4. [a]ll Documents and Communications Concerning purported or perceived macroeconomic developments and market conditions resulting in the renegotiation of the merger price and Amendment No. 1 to the Original Merger Agreement";

- "5. [a]ll Documents and Communications Concerning: (a) any objection by a shareholder to the Merger, Including any Documents responding to, discussing, analyzing, or commenting on the objections received from shareholders; or (b) a potential, pending, or ongoing appraisal proceeding in the Grand Court of the Cayman Islands";

- "6. all Documents and Communications produced as part of any other proceeding brought pursuant to 28 U.S.C. § 1782 Concerning the Merger, any Alternative Transactions to the Merger, or any other … strategic alternatives contemplated by the Company"; and

- "7. [a]ll non-privileged Documents and Communications Concerning Your retention of Documents that may be responsive to this Subpoena, Including any Document or Communication you received Concerning retention of Documents in anticipation of litigation Concerning the Merger."

Dkt. 1-3, at 4, 14-18.[2]

The undersigned granted Oasis and Quadre's application and authorized a subpoena to be issued and served on Idekoba. *See* Dkt. 12. Petitioner 507 Summit filed a separate application, assigned the -473 cause number, which, on the parties' joint request, the District Court consolidated with Oasis and Quadre's case. Dkt. 27. Idekoba now seeks to vacate the Court's order granting Oasis and Quadre's application, quash that subpoena, and deny 507 Summit's application. Dkt. 17. The District Court referred the motion to the undersigned for report and recommendation.

---

[2] 507 Summit's requests largely track the same categories of material. *See* No. 1:23-MC-473-RP, Dkt. 1-17, at 13-18.

## II. DISCUSSION

Idekoba opposes the applications both under § 1782's rubric and the general rules governing discovery found in the Federal Rules of Civil Procedure. Because Idekoba's rules-based arguments essentially overlap with the discretionary factors the Court is to consider when deciding whether to permit the requested discovery, the undersigned analyzes Idekoba's arguments within that framework. *See, e.g., In re: Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-MC-80048-MEJ, 2016 WL 1161568, at *5 (N.D. Cal. Mar. 24, 2016) ("The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure.").

### A. Statutory Prerequisites

An applicant for § 1782 discovery must show that: (1) the applicant is an "interested person"; (2) the discovery is "for use in a proceeding in a foreign or international tribunal"; and (3) the source of the requested discovery "resides or is found" in the district where the application is filed. 28 U.S.C. § 1782; *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 553 (5th Cir. 2012). Idekoba does not challenge the first two elements—Petitioners are interested parties, and the documents and deposition testimony they seek would be used in their appraisal proceedings currently underway in the Grand Court of the Cayman Islands. Idekoba does, however, challenge the third element. Idekoba does not contest the fact that he resides in the Western District. But, he contends, he is not the "true target" of the discovery sought. Idekoba argues that Petitioners' real aim is to obtain discovery from

4

Recruit Holdings, a Japan-based company that is not subject to the Court's § 1782 jurisdiction. Idekoba urges the Court to decline to apply § 1782 "extraterritorially" to Recruit Holdings, citing cases in which courts have "routinely" rejected attempts by applicants to "pass through" an individual or entity found within a district to obtain discovery from an entity outside of it. Dkt. 17, at 10-13.

"When interpreting a statute, we look first and foremost to its text." *United States v. Alvarez-Sanchez*, 511 U.S. 350, 356 (1994); *see also, e.g.*, *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous."). Section 1782 states that discovery may be sought in "[t]he district court of the district in which a person resides or is found." 28 U.S.C. § 1782. Idekoba does not dispute that he resides in (and, for that matter, was found in) the Western District of Texas. That ends the analysis. Congress does not ask courts to look behind the application to determine the intent of the applicant or the "true target" of the discovery sought. The plain text of the statute simply asks whether the respondent resides in or can be found within the district, and here Idekoba unquestionably does. The undersigned declines Idekoba's invitation to engage in his proposed extra-textual analysis.

Idekoba, noting that the responsive Recruit Holdings documents reside in Japan, also argues that the application should be denied because § 1782 should not be applied "extraterritorially." Dkt. 17, at 12-13. Idekoba concedes that the Fifth Circuit has not addressed this question, but he points out that at least one district court in the Circuit has denied an application at least in part on this basis. *Id.* (citing

*In re Application of Gazprom Latin Am. Servicios*, No. 4:14-mc-1186, 2016 WL 3654590, at *3, 12 (S.D. Tex. July 6, 2016)). Courts outside the Circuit, however, have rejected this distinction on the basis of the alleged extraterritoriality of the requested documents. *See* Dkt. 30, at 19-21. The undersigned agrees with Petitioners that this distinction means little in light of the fact that the responsive documents are stored electronically and are just as easily accessed here in the United States as they would be anywhere else. *See Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) ("At bottom, we agree with the District Court that the location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital age—does not establish a per se bar to discovery under § 1782."). The undersigned likewise declines to impose this extra-textual extraterritoriality gloss on § 1782. Accordingly, the location of the servers where these documents reside has no bearing on the analysis here.

Because Idekoba resides in the district and the discovery sought is for use in a foreign proceeding, he is amenable to discovery under § 1782. But Idekoba correctly argues that *whether* the Court should order discovery under this statute is discretionary—the Court "*may* order him to give his testimony or statement or to produce a document or other thing ...." *Id.* (emphasis added); *see Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."). Courts making this discretionary determination have done so in consideration of the factors set out in *Intel. See, e.g.*, *CFE Int'l LLC v. Antaeus Grp.*

*LLC*, No. 1:22-CV-365-LY-ML, 2022 WL 17731821, at *7-9 (W.D. Tex. Aug. 26, 2022), *report and recommendation adopted*, No. 1:22-CV-00365-LY-ML, 2022 WL 19569581 (W.D. Tex. Dec. 6, 2022).

### B.   Discretionary Factors

In *Intel*, the Supreme Court identified four non-exhaustive factors to guide a court's exercise of discretion: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature and character of the foreign proceeding and the receptivity of the foreign government, court, or agency to federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the requests are unduly intrusive or burdensome. 542 U.S. at 264. The parties do not meaningfully dispute the first two factors. Idekoba is not a party to the Grand Court proceedings, and he does not contest Petitioners' characterization of the proceedings in the Cayman Islands or the Grand Court's receptivity to any discovery that might be obtained here. Accordingly, the undersigned focuses on factors 3 and 4—whether Petitioners are attempting to circumvent foreign proof-gathering restrictions, and whether Petitioners' requests are unduly intrusive or burdensome (the latter of which, as noted above, merges into Petitioner's rules-based arguments).

1.  Do the requests conceal an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States?

Courts have taken a restrictive view of this factor. *See, e.g.*, *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1305 (S.D. Fla. 2012) ("Absent a persuasive showing that a section 1782 applicant like Mesa Power is actively seeking to circumvent the foreign tribunal's discovery methods and restrictions, which showing has clearly not been made here, this factor does not counsel against section 1782 relief."). Here, Idekoba argues that Petitioners *could* seek this discovery from Recruit Holdings in Japan. But there is no evidence in this record establishing what discovery would be available under Japanese proof-gathering procedures.

The record is likewise devoid of evidence that Cayman Islands or Japanese law *bars* this sort of discovery. "Proof-gathering restrictions are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015) (internal quotations omitted). The information sought under § 1782 need not be discoverable in the foreign country, so long as its discovery is not explicitly prohibited. *See, e.g.*, *In re O Keeffe*, 650 F. App'x 83, 85 (2d Cir. 2016) ("Our precedents expressly forbid district courts from considering the discoverability of evidence in a foreign proceeding when ruling on a § 1782 application."). "Only where the materials being sought are privileged or otherwise prohibited from being discovered or used is the third *Intel* factor implicated." *In re*

*Tiberius Grp. AG*, No. 19-MC-467 (VSB), 2020 WL 1140784, at *4 (S.D.N.Y. Mar. 6, 2020). In the absence of such evidence, the undersigned cannot conclude that Petitioners are seeking to circumvent foreign proof-gathering restrictions with their applications.

2. Are the requests unduly intrusive or burdensome?

"[W]hat is undue or burdensome in the context of the transnational litigation factors expressed in *Intel* is not necessarily identical to the burden and oppression standards that may limit third-party domestic discovery." *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 475-76 (5th Cir. 2022); *see also Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 556 (5th Cir. 2012) (the threshold standard for § 1782(a) "requires a different analysis" from a motion to quash under the Federal Rules of Civil Procedure). Nonetheless, courts have looked to the Rules for guidance in considering this factor. *See, e.g.*, *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *5.

a. Is Idekoba an improper "pass through"?

Idekoba contends that Petitioners improperly seek to obtain Recruit Holdings documents from him, rather than the company itself. Dkt. 17, at 11-12. In support, Idekoba cites cases that have addressed this argument "through the lens of Section 1782's statutory requirements." *Id.* (citing *In re Fuhr*, No. 13-CV-6753, 2014 WL 11460502, at *2 (S.D.N.Y. Aug. 6, 2014), *aff'd sub nom. Fuhr v. Deutsche Bank, A.G.*, 615 F. App'x 699, 700 (2d Cir. 2015); *Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*, 362 F.3d 401, 404 (7th Cir. 2004); *Doe Run Peru S.R.L. v. Trafigura AG*, No. 3:11-MC-77

9

(SRU), 2011 WL 13059042, at *1 (D. Conn. Aug. 24, 2011)). In these cases, the courts rejected § 1782 applications directed at parent companies or corporate affiliates that were distinct entities from those that were the actual targets of the discovery. Petitioners point the Court to multiple cases rejecting the same "true target" argument, concluding, as the undersigned has, *supra* Part II.A, that "'[i]nsofar as Respondents all concede they themselves can be found in this District, the first statutory element is met.'" Dkt. 30, at 16 (quoting *BANOKA S.a.r.l. v. Alvarez & Marsal, Inc.*, No. 22-MC-00182-GHW-KHP, 2023 WL 1433681, at *6 (S.D.N.Y. Feb. 1, 2023)).

Nonetheless, these considerations do bear on the undersigned's analysis here.[3] Unlike the examples cited by Idekoba, he is not a distinct corporate entity or affiliate of Recruit Holdings; as President, CEO, and a board member, he is a central figure within the Recruit Holdings corporate structure. *But*, as discussed more fully below, Idekoba, the individual, is *not* Recruit Holdings, the company. In that sense, as an individual, he *is* separate. Whether that separateness matters here turns on whether Idekoba has "possession, custody, or control" of the documents Petitioners seek.

---

[3] Petitioners note, *see* Dkt. 30, at 17 n.9, that courts have also considered this argument in the context of the first *Intel* factor—whether the person from whom discovery is sought is a participant in the foreign proceeding. *See, e.g.*, *In re Iraq Telecom Ltd.*, No. MC 19-175, 2023 WL 2402873, at *6 (E.D. Pa. Mar. 8, 2023) ("The Clients' only opposition to this factor is their argument that Dechert is being used as a 'straw party' to obtain discovery which Iraq Telecom refuses to produce. However, it is of no consequence that Iraq Telecom now also possesses the discovery at issue. Dechert is not a 'wrong target' of the Section 1782 application simply because Movants may be able to obtain the documents otherwise from a different entity."). Regardless of the factor, the pass-through/true-target/straw-party argument bears on the analysis, and the undersigned has considered it in the manner that best fits the dispute as framed by the parties.

> b. Does Idekoba have "possession, custody, or control" of the documents sought?

The Federal Rules of Civil Procedure require a subpoenaed party to produce those records in its "possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). "[F]ederal courts have consistently held that documents are deemed to be within [a party's] 'possession, custody or control' … if the party has actual possession, custody, or control, or has the *legal right to obtain the documents on demand.*" *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (quoting *In re Banker's Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) (emphasis added), *cert. dismissed*, 517 U.S. 1205 (1996)). "Control is defined as the legal right to obtain documents upon demand." *Id.* (citing *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989)).

Petitioners argue that, as President and CEO of Recruit Holdings, Idekoba has "possession, custody, or control" of all of the documents sought in their application. Dkt. 30, at 22-26. Accordingly, their attempt to obtain Recruit Holdings documents from him is appropriate under the Rules and does not reflect an attempt to circumvent foreign proof-gathering restrictions. Citing his status as an "employee," Idekoba responds that Fifth Circuit precedent rejects Petitioners' position. Dkt. 17, at 14 ("The Fifth Circuit has ruled expressly that the fact that officers or employees may have 'access to the records is irrelevant, for mere access is not possession, custody, or control.'" (quoting *In re Grand Jury Subpoena*, 646 F.2d 963, 969 (5th Cir. 1981))).

The parties agree that the universe of potentially responsive documents fall within 3 categories: (1) personal emails (*i.e.*, emails sent from Idekoba's personal email address(es)) and documents; (2) emails sent from or received by his work email address(es); and (3) documents that, by virtue of his position at Recruit Holdings, Idekoba can access. Idekoba concedes that the first category is fair game, but also states that there are no responsive, non-privileged documents in this category. Dkt. 35-4, at 2. As for the remaining two categories, Idekoba argues that while he has *access* to these documents, he does not have *authority* to disclose them. *See* Dkt. 35, at 11 (citing Dkt. 35-2, Idekoba's confidentiality agreement with Recruit Holdings).

Petitioners point to the observation in *Smith W. Tex. Props., Ltd. v. Allied Prop. & Cas. Ins. Co.* that "documents are deemed to be within the 'possession, custody, or control' of a responding party if that party either has 'actual possession, custody, or control' of the documents or if that party 'has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action.'" No. 18-CV-137-DC, 2020 WL 6373470, at *3 (W.D. Tex. Aug. 20, 2020) (quoting *S. Filter Media, LLC v. Halter*, No. 13-CV-116-JJB-RLB, 2014 WL 4278788, at *5 (M.D. La. Aug. 29, 2014)); *see also Duarte v. St. Paul Fire and Marine Ins. Co.*, No. EP-14-CV-305-KC, 2015 WL 7709433, at *5 (W.D. Tex. Sept. 25, 2015) ("Rule 34's definition of possession, custody, or control, includes more than actual possession or control of [documents]; it also contemplates a party's legal right or practical ability to obtain [documents] from a [non-party] to the action." (internal quotation marks omitted)). Applying this rule to Idekoba's own work emails, Petitioners argue that

12

"an individual has 'the legal right to personally possess' work emails where those persons 'are free to use their work emails for many purposes…. They have access to these emails on their personal electronic devices, and their work and personal devices can search and download their work emails.'" Dkt. 30, at 23-24 (quoting *Torrey v. Infectious Diseases Soc'y of Am.*, 334 F.R.D. 79, 86 (E.D. Tex. 2019)).

And as for other responsive Recruit Holdings documents that Idekoba may have the ability to access, Petitioners note that "this Court recently determined a senior-level employee was found to have the 'practical ability' to obtain a company's documents where that employee 'ha[d] the ability to enter into contracts on behalf of [the company], ha[d] access to its bank accounts, and intimate knowledge of its ongoing business dealings.'" *Id.*, at 24 (quoting *MWK Recruiting, Inc. v. Jowers*, No. 1:18-CV-0444 RP, 2020 WL 1987921, at *2 (W.D. Tex. Apr. 27, 2020)); *see also MWK Recruiting*, 2020 WL 1987921, at *2 ("This is more than sufficient to show that Jowers … has the *practical ability* to obtain documents." (emphasis added)).

Whether Idekoba can, or should, be compelled to turn over Recruits Holdings documents is the key dispute in this case. The undersigned agrees with Petitioners that as a C-suite officer in the company, Idekoba is more than a mere "employee." The most on-point case cited by Petitioners is *In re Kidd*, which considered this control question in the context of a § 1782 application. *See* Dkt. 30, at 25-26 (citing *In re Kidd*, No. 3:20-MC-00016-TOF, 2020 WL 2404928, at *11-12 (D. Conn. May 12, 2020)).[4]

---

[4] Petitioners cite the magistrate judge's decision, which includes a more thorough discussion of the matters presented here than in the district court decision overruling in part and sustaining in part the magistrate judge's ruling. *See In re Kidd*, No. 3:20-CV-00800 (KAD),

13

Like Petitioners here, the petitioners in *Kidd* sought documents from high-level executives in connection with litigation involving a corporate transaction. 2020 WL 2404928, at *11. The respondents, like Idekoba, challenged the subpoena, arguing it could "encompass only those documents that [the executives] own or create in their personal capacities and not as employees of [the company], while [the petitioner] says that it can encompass documents that they do not own but nevertheless have the 'authority' or 'practical ability' to obtain." *Id.*, at *12. Citing the executives' "practical ability" to obtain the documents, the court sided with the petitioners. *Id.* ("Courts in the Second Circuit have generally found that corporate officials have the 'practical ability' to obtain documents from their corporations."); *see also id.* ("[U]nder Rule 45, a party *can* ordinarily tell the officer of a company to produce otherwise-discoverable documents that the officer has the practical ability to obtain.").

Idekoba argues that cases like *Kidd*, and the other cases cited by Petitioners out of the Second Circuit, are out-of-step with the law in this Circuit. Dkt. 35, at 9-12. Idekoba points to the Fifth Circuit's decision in *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 821 (5th Cir. 2004). *See* Dkt. 35, at 9. The court in *Wiwa* found petitioners' subpoena overbroad because it sought all documents to which the respondent had access. 392 F.3d at 821 ("The phrase 'to which he has access' is overbroad; it would require the retrieval of documents from Nigeria—documents not under Oteri's custody, control, or possession, but to which he could conceivably have access by virtue of his prior position with Shell. We therefore limit the document

---

2020 WL 5594122, at *13 (D. Conn. Sept. 18, 2020). The district court, however, did not overturn the portion of the magistrate judge's ruling cited by Petitioners. *See id.* at *10.

14

request in the subpoena to documents within Oteri's custody, control, or possession."). But unlike the respondent in *Wiwa*, Idekoba is not a *former* employee; he is currently President and CEO of Recruit Holdings and serves on the company's board.

So is Idekoba's "practical ability" to retrieve the requested documents enough? In addition to the decisions cited above, Petitioners point to the decision from this Court in *MWK Recruiting*, where the Court concluded that the targeted executive "must produce not only his personal documents that are responsive to the requests, but also must produce Legis documents that are responsive." 2020 WL 1987921, at *2; *see also id.* (citing evidence that "strongly supports MWK's position that Jowers is more than a 'mere employee' of Legis"). The undersigned likewise concludes that on this record, Idekoba has possession, custody, and control of the document sought, and that the "twin aims" of § 1782—"to provide efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts," *Tex. Keystone*, 694 F.3d at 553-54 (internal quotation marks omitted)—will be served by authorizing Petitioners' discovery requests from Idekoba.

Idekoba's reliance on his confidentiality agreement does not lead the undersigned to a different conclusion. The agreement states Idekoba "will not disclose or divulge any confidential information obtained in the course of business … any external third party … without any prior permission from the Company in writing, and that [he] will not use any confidential information for any purposes other than [his] work for the Company." Dkt. 35-2. This is not a bar to production in a court

15

proceeding, however. Any confidentiality concerns raised by this agreement can be addressed by entry of a protective order.

                c.      Are the document requests facially overbroad?

Idekoba complains that the document discovery Petitioners seek is overbroad. In particular, he points to the request for "'[a]ll Documents' concerning (a) the Merger, (b) the 'valuation' of 51job, (c) 'regulatory developments' in the People's Republic of China, (d) objections by 51job shareholders to the Merger, or (e) any other legal proceedings related to the Merger," along with other documents included in the 25 categories (including sub-parts) of the subpoena. Dkt. 17, at 17-18. Idekoba argues these requests are facially overbroad, unduly burdensome, seek irrelevant documents, and are available to Petitioners through other channels. *Id.* Idekoba bears the burden to prove overbreadth. *E.g.*, *Wiwa*, 392 F.3d at 818. He has opted not to provide the Court with an affidavit explaining, for example, how much effort would be necessary to respond to these document requests. Because he has forgone any evidentiary support, the Court is limited to this facial challenge.

While several of the document requests refer to "All non-privileged Documents and Communications …," the undersigned agrees with Petitioners that the requests are not facially overbroad. Petitioners have limited their requests to the two-year period surrounding the merger. Dkt. 1-3, at 14. And the categories of documents correspond to the Directions Order from the Grand Cayman appraisal proceeding. *See* Dkt. 30, at 32-33 (setting out a side-by-side comparison of the order and the document requests). Given the specificity of the requests, and the limited timeframe

proposed, the undersigned rejects Idekoba's conclusory assertion that the document requests are facially overbroad or unduly burdensome.

> d. Should Idekoba be required to sit for a deposition under the "apex deposition" doctrine?

Lastly, Idekoba challenges Petitioners' request to take his deposition, citing the apex-deposition doctrine. Where a party seeks to take the deposition of a high-level, or apex, executive, the Fifth Circuit "has recognized the need for first utilizing less-intrusive means before taking such [a] deposition, by way of deposing lesser-ranking employees." *Ross Neely Sys., Inc. v. Navistar, Inc.*, No. 3:13-CV-1587-M-BN, 2015 WL 12916401, at *1 (N.D. Tex. Apr. 9, 2015) (citing *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979)). "Unless the executive possesses 'unique personal knowledge' about the controversy, the court should regulate the discovery process to avoid 'oppression, inconvenience, and burden' to the executive and the corporation." *Robinson v. Nexion Health at Terrell, Inc.*, No. 3:12-CV-03853-L-BK, 2014 WL 12915533, at *2 (N.D. Tex. Apr. 16, 2014) (quoting *Comput. Acceleration Corp. v. Microsoft Corp.*, 9:06-CV-140, 2007 WL 7684605, at *1 (E.D. Tex. 2007)). A district court may act to delay or prevent the taking of an apex deposition where the court finds that the executive lacks information that is relevant to the opposing party's claims or defenses or that the opposing party can obtain the information it seeks through less-intrusive means. *See Salter*, 593 F.2d at 651.

The undersigned agrees with Idekoba that the requested deposition is not appropriate at this time. If Petitioners, after reviewing the document production, can demonstrate that Idekoba possesses unique personal knowledge about the merger

17

that goes beyond what is revealed in the documents themselves, then the requested deposition might appropriately be ordered. *See, e.g.*, *Gauthier v. Union Pac. Rr. Co.*, No. 1:07-CV-12 (TH/KFG), 2008 WL 2467016, at *4 (E.D. Tex. June 18, 2008) (finding a court may revisit the appropriateness of the executive's deposition at a later date if the party seeking to depose the executive shows that it "cannot obtain the necessary information through other means of discovery").

### III. RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Idekoba's motion to vacate, Dkt. 17, and **GRANT IN PART AND DENY IN PART** Petitioner's application, Dkt. 1. In particular, the undersigned recommends that Petitioners be permitted to serve the requested document production on Idekoba and deny the requested deposition, without prejudice to its being reasserted following the document production. The referral to the undersigned is **CANCELED**.

### IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review

by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED September 26, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE